Nicolas W. Spigner (CA Bar No. 312295)
SPIEGEL & UTRERA, P.C.
8939 S. Sepulveda Blvd., Suite 400
Los Angeles, California 90045
Phone: (800) 603-3900
Fax: (800) 520-7800
Email: attorneyspigner@amerilawyer.com
*Attorneys for Plaintiffs,*
*OUT OF NOWHERE d/b/a OCEANS WEST and STEVEN BELL*

**UNITED STATES DISTRICT COURT**

**IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OUT OF NOWHERE, a California Corporation, doing business as OCEANS WEST; and, STEVEN BELL, an Individual, | **Case Number:** |
| *Plaintiffs*, | **PLAINTIFF OUT OF NOWHERE AND PLAINTIFF STEVEN BELL'S COMPLAINT FOR:** |
| vs. | **1. BREACH OF CONTRACT;** |
| | **2. ACCOUNT STATED;** |
| NOLAN TRANSPORTATION GROUP, LLC, a Delaware Limited Liability Company; MARK SMITH an Individual, LEE WASSERMAN, an Individual; and, DOES 1-10, inclusive, | **3. OPEN BOOK ACCOUNT;** |
| | **4. UNJUST ENRICHMENT;** |
| | **5. FRAUDULENT MISREPRESENTATION;** |
| *Defendant).* | **6. NEGLIGENT MISREPRESENTATION;** |
| | **7. DEFAMATION (Libel);** |
| | **8. DEFAMATION PER SE (Libel);** |
| | **9. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;** |
| | **10. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** |
| | **11. FRAUDULENT BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200 *et seq*);** |
| | **12. VIOLATION OF 49 U.S.C. § 14103(b).** |

## **COMPLAINT**

COMES NOW Plaintiff OUT OF NOWHERE, a California corporation, doing business as OCEANS WEST ("OON"), and Plaintiff STEVEN BELL ("BELL") (hereinafter collectively referred to as "Plaintiffs") by and through their undersigned counsel of record, SPIEGEL & UTRERA, P.C., hereby complains and alleges the following against Defendant, NOLAN TRANSPORTATION GROUP, LLC, Defendant MARK SMITH, Defendant LEE WASSERMAN, and DOES 1-10, inclusive (hereinafter collectively referred to as "Defendants"), as follows:

### **PARTIES**

1.  OON is and was at all relevant times mentioned herein,  a corporation organized under the laws of the State of California, with its principal place of business in the State of California, operating as a for-hire motor carrier of goods by truck  in interstate, intrastate, and foreign commerce. The Federal Motor Carrier Safety Administration ("FMCSA") has issued a license under 49 U.S.C. § 13902 allowing Plaintiff to operate as a motor carrier of property.

2.  BELL is an individual and resident of the State of California. Bell is the principal of OON, and did business under the fictitious business name OCEANS WEST, up until the incorporation of OON, on September 10, 2020.

3.  Plaintiffs are informed and believe that Defendant, NOLAN TRANSPORTATION GROUP, LLC ("NTG"), is a limited liability company organized under the laws of the State of Delaware, registered to do business as a foreign entity in the State of Georgia, with its principal place of business in the State of Georgia, at 400 Northridge Road, Ste. 1000, Atlanta, GA 30350. NTG operates as a freight broker, which contracts with shippers for freight to be moved, and hires carriers such as Plaintiffs to deliver the loads.

4.   Plaintiffs are informed and believe that Defendant, MARK SMITH ("SMITH"), is an individual and resident of the State of Georgia, whose last known business address is 400 Northridge Road, Suite 1000, Atlanta, GA,30350. SMITH is or was employed by NTG and was an authorized agent of NTG in its dealings with Plaintiffs set forth herein.

5.   Plaintiffs are informed and believes that Defendant, LEE WASSERMAN ("WASSERMAN"), is an individual and resident of the State of Georgia, whose last known business address is 400 Northridge Road, Suite 1000, Atlanta, GA,30350. WASSERMAN is or was employed by NTG and was an authorized agent of NTG in its dealings with Plaintiff set forth herein.

6.   Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10, inclusive, whether individual, corporate, associate, or otherwise,  of Defendants DOES 1 through 10, inclusive, and each of them are unknown to Plaintiffs, who sues these Defendants by such fictitious names. The Plaintiff will seek leave of Court to amend this Complaint to identify said Defendants when their identities are ascertained. Plaintiffs are informed and believes, and on that basis allege, that each of the defendants named herein as Doe 1 through Doe 20, inclusive, is responsible in some manner for the occurrence, injury, and other damages alleged in this Complaint.

## JURISDICTION AND VENUE

7.   This Court has subject matter jurisdiction over thus action under 28 U.S.C. § 1332, based on the complete diversity of citizenship between Plaintiff and all Defendants, and an amount in controversy which exceeds $75,000.00.

8.   This Court also has subject matter jurisdiction over thus action under 28 U.S.C. §§ 1331 and 1337, in that Plaintiff's action to collect freight charges on interstate shipments raises a

federal question under Acts of Congress regulating commerce, 49 U.S.C. §§ 13706, 13707 13708, 13709, and 14101(b).

9.   Defendants do business in this Distinct, and this action arises out business Defendants transacted in this District, so as to make venue proper under 28 U.S.C. § 1391(b)(2)-(3).

10.   The court has supplemental jurisdiction over the related California state law causes of action pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

1.   On or about August 16, 2021, BELL, on behalf of OON, responded to NTG's post on a truck load board website, for the transportation of a 20,000 lb. load from West Coast Packer, located at 18020 S. Santa Fe Ave., Rancho Dominguez, CA 90221, and transport the load to Extra Space Storage #529, 5801 West Charleston Blvd., Las Vegas, NV 89146 (hereinafter "NTG Load").

2.   NTG was acting as a broker for the NTG Load, on behalf of shipper, Vector Global Logistics, Inc.

3.   Before agreeing to transport the NTG Load, BELL, informed SMITH, that OON would only take the NTG Load if it could be dropped off at 12 pm, as OON had an appointment to pick-up another load in Las Vegas, NV before 3:00 pm on August 20, 2021, and transport it back to Southern California. OON would not have agreed to transport the NTG  Load to Las Vegas but for having the separate contract to carry another load back to California, as OON would have lost money traveling back to California with an empty truck.

4.   NTG, by and through SMITH, assured Plaintiffs that the NTG load was to be delivered in Las Vegas, NV at 12:00 pm where it would be unloaded by a crew, giving OON time to pick up another load in Las Vegas, NV before 3:00 pm, before driving back to California.

5.      On or about August 17, 2021, OON entered into an agreement with NTG to pick up a 2 piece, 20,000 lb. load from West Coast Packer in Rancho Dominguez, CA on August 19, 2021 at 10:00 am, and deliver the load to Extra Space Storage in Las Vegas, NV on August 20, 2021 at 12:00 pm, where NTG had scheduled a crew to remove the load from OON's truck, in exchange for a payment of $1,200. A true and correct copy of the First Carrier Conformation for the NTG Load, dated August 17, 2021 ("First Carrier Conformation") is attached hereto as **Exhibit A**.

6.      NTG was acting for a broker for the NTG load, on behalf of Vector Global Logistics, Inc. ("VGL"). A true and correct copy of VGL's Bill of Landing for the NTG Load is attached hereto as **Exhibit B**.

7.      On August 19, 2021, OON arrived at West Coast Packer to pick up the NTG Load. Normally Plaintiffs would monitor the Load as it was being loaded into its truck, however, due to COVID-19 protocols, Plaintiff's driver, BELL, had to stay in the cabin of the truck.

8.      After the NTG Load was deposited in Plaintiff's truck, BELL realized that it weighed 40,000 lbs., twice the contracted weight of 20,000 lbs. BELL demanded that West Coast Packer remove the load without being instructed to do so by NTG.

9.      BELL contacted NTG and were told that NTG would not instruct West Coast Packer to remove the NTG Load, OON had to deliver it since it was already loaded, and NTG would pay an additional $200 overweight charge. NTG then sent OON an amended carrier conformation ("Second Carrier Confirmation") reflecting the $200 overweight charge, stating that the NTG Load was scheduled to be unloaded at 12:00 pm. A true and correct copy of the Second Carrier Confirmation with the $200 overweight charge is attached hereto as **Exhibit C**.

10.    Plaintiffs were forced to accept the Second Carrier Conformation as NTG refused to remove the NTG Load despite it being twice the contracted weight.

11.    OON arrived at the drop-off location in Las Vegas, NV at 10:37 am, there was no one to unload the truck, and the load was refused at 11:27 am, as indicated on the Bill of Landing. **Exhibit B**. A true and correct copy of the Plaintiffs' location history while transporting the NTG Load, showing the rime OON arrived in Las Vegas is attached hereto as **Exhibit D.**

12.    Plaintiff immediately contacted NTG, as the agreement was for the load to be prodded of at 12:00 pm, and Plaintiff had to pick-up another load before 3:00 pm.

13.    SMITH responded via text message, telling BELL, "everything is taken care of, there will be a crew there at noon." A true and correct copy of the text messages are attached hereto as **Exhibit E**.

14.    SMITH told Plaintiffs that the crew that was scheduled to unload its truck at 12:00pm was  running behind, and to wait until they arrived.

15.    At 1:23 pm on August 20, 2021, another representative of NTG, Brian Oxley, told Plaintiff that the NTG load was scheduled to be delivered at 3:00 pm, rather than 12:00 pm as Plaintiffs were previously informed. A True and Correct Copy of the Text Message from Brian Oxley is attached hereto as **Exhibit F**.

16.    NTG agreed to pay OON an additional $800 layover payment for waiting at the receiver, $50 for each hour Plaintiffs had to wait for the crew to unload the truck (3.43 hours), and changed the delivery time to 3:00 pm. A true and correct copy of the Third Carrier Confirmation reflecting the additional $800 layover payment is attached hereto as **Exhibit G**. A true and correct copy of NTG's  email promising to pay NTG $50 an hour for detention starting at 2:00 pm is attached hereto as **Exhibit H**.

17. After waiting at the delivery location for approximately 2 hours, the police told BELL that he had to move the Truck as it was parked illegally. Thereafter NTG agreed to pay an advance half of the payment up-front, as lumper in the amount $1,100, and sent Plaintiff a comp check in that amount. A true and correct copy of the Fourth Carrier Confirmation reflecting the $1,100 advance lumper payment is attached hereto as **Exhibit I**.

18. NTG, by and through Mark SMITH, instructed Plaintiffs to "cash your comcheck and deliver the freight" via email. A true and correct copy of NTG's email instructing Plaintiffs to cash the comcheck is attached hereto as **Exhibit J**.

19. As Plaintiffs had to move the vehicle, and could only cash the comcheck at a truck stop, BELL drove to the nearest truck stop, cashed the comcheck and returned to the delivery location. A true and correct copy of the receipt from cashing the comcheck is attached hereto as **Exhibit K**.

20. After BELL cashed the comcheck, NTG sent out a Fifth Carrier Conformation, reducing the original $1,200 rate to $1,100, despite no agreement to do so between the parties. A true and Correct copy of the Fifth Carrier Conformation is attached hereto as **Exhibit L**.

21. Upon information and belief, NTG unilaterally changed the agreement intending to claim that Plaintiffs were only entitled to $1,100, and avoid pay the remaining $1,271.50 when due.

22. BELL spoke with Scott Webb, who informed BELL that he flew in from Florida to supervise the delivery of the NTG load, and he was always scheduled to do so at 3:00 pm. Scott Webb provided copies of email communications dated August 17, 2021, showing that at all times, the NTG load was scheduled to be unloaded on August 20, 2021 at 3:00 pm. A true and correct copy of Scott Webb's August 17, 2021 Emails are attached hereto as **Exhibit M**.

23.   Upon information and belief, Defendants are in possession of additional documents showing their knowledge that the NTG load was scheduled for delivery at 3:00 pm and weighed 40,000 lbs.

24.   After speaking with Snap Towing, the towing company hired to remove the NTG Load, BELL learned that they were not running late, but were always scheduled for 3:00 pm.

25.   Jennifer, form Snap Towing, also informed BELL that the NTG Load was scheduled for delivery at 3:00 pm. At all times, Defendants knew that the Snap Towing was not scheduled to remove the load until 3:00 pm, and Scott Webb was not scheduled to arrive in Las Vegas, NV until 3:00 pm.

26.   Ultimately, the NTG load was not removed from Plaintiffs' truck until after 5:00 pm, causing Plaintiffs to lose the job contracted for to pick up a load from Las Vegas, to be delivered in California. Plaintiffs had no choice but to wait for the NTG load to be removed from its truck.

27.   Plaintiffs' truck was also damaged by the tow truck which removed the NTG Load, due to the excessive weight, double the agreed upon weight.

28.   On or about August 22, 2021, Plaintiffs sent NTG an invoice for the remaining balance due, $1,217.50, as per the parties agreement. NTG refused to pay the remaining $1,217.50 that was due. A true and correct copy of Invoice T080081921 is attached hereto as **Exhibit N**.

29.   On August 23, 2021, NTG, by and through WASSERMAN, posted a false and defamatory Freightguard Report about OON and BELL, on Carrier411.com, a website used by brokers to vet carriers before giving them jobs ("August Freightguard Report"). A true and Correct copy of the August Freightguard Report is attached hereto as **Exhibit O**.

30.    The August Freightguard Report falsely states that Plaintiff "held the load hostage," made "repeated pickup or delivery failures," "in-transit agreement modification" and, engaged in "unethical or deceptive business practices." Specifically, the August Freightguard Report falsely claims:

> "Steve Bell arrived onsite at the receiver and was told the equipment was not there to get him unloaded. They were running behind and we paid carrier $800 in detention to sit and wait about 3 hours. Steve decided he would take the load back to the shipper if we did not pay him for the load upfront, and his reason was it was 'out of principle'. Then Steve began talking to the customer and made the whole situation worse".

31.    The August Freightguard Report is demonstrably false as the Agreement was for the NTG Load to be delivered and unloaded at 12 p.m., the equipment to unload the truck was scheduled to begin work at 3 p.m., and BELL threatened to take the load back because NTG and its agents repeatedly lied about the load, and he had a reasonable suspicion that such dishonesty would resurface when it was time to make payment. Plaintiffs' suspicions were warranted, as NTG ultimately refused to make payment as agreed.

32.    Plaintiff learned about the August Freightguard Report after a broker refused to hire Plaintiff for a job, and provided a copy of thereof. Plaintiff retained counsel to send a cease and desist letter to NTG, demanding the removal of the false and defamatory August Freightguard Report.

33.    After receiving the cease and desist letter dated September 17, 2021, NTG removed the false and defamatory August Freightguard Report, on or about September 22, 2021.

34.    However, after learning that Plaintiff was no longer represented by counsel who sent the Cease and Desist Letter, on October 7, 2021, NTG, by and through Lee WASSERMAN, published another false and defamatory false and defamatory Freightguard Report ("October

Freightguard Report"). A true and correct copy of the October Freightguard Report is attached hereto as **Exhibit P**.

35.    This time, it was alleged that Plaintiffs "held the load hostage", "repeated delivery or pickup service failures", "fraudulent activity", and "unethical or deceptive business practices". Specifically, it is alleged that:

> "Steve Bell took a load that required a crane to unload. When carrier arrived at the receiver, the crane was held up at the first job and the carrier was informed it would be 3 hours before the crane arrived. He was paid $800 for 3 hours and then he took the freight to a local 7/11 and held it hostage until we paid him half the line haul upfront, then he harassed out employers nonstop via phone, email, and text. All of which we have evidence of."

36.    The October Freightguard Report is also demonstrably false and defamatory. There was no crane involved in unloading the NTG Load, NTG hired a flat bed tow-truck to pull the load off of Plaintiffs' truck. A picture of NTG's truck being unloaded by Snap Towing is attached hereto as **Exhibit T**.

37.    As set forth above, there was no delay, NTG scheduled the delivery at 3 pm and lied to Plaintiffs about the weight and delivery time to induce him into an agreement it would have otherwise refused. Moreover, NTG told Plaintiffs' to go cash the comcheck then deliver the NTG Load.

38.    Due to NTG's false and defamatory Freightguard Reports, Plaintiffs has been refused jobs by several companies, including, NFI Industries Inc., XPO Logistics, Team Eagle Logistics, Inc. True and correct copies of correspondence from NFI Industries, Inc., refusing to hire Plaintiff due to the October Freightguard Report is attached hereto as **Exhibit Q**. True and correct copies of correspondence from XPO Logistics, refusing to hire Plaintiff due to the October Freightguard Report is attached hereto as **Exhibit R**. True and correct copies of

correspondence from Team Eagle Logistics, Inc., refusing to hire Plaintiff due to the October Freightguard Report is attached hereto as **Exhibit S**.

39.   Plaintiffs have also been refused jobs from other brokers, based on the false and defamatory statements in the October Freightguard Report, and will continue to suffer such harm as long as the October Freightguard remains published.

### FIRST CAUSE OF ACTION
#### (Breach of Contract)
#### *By OON Against NTG*

40.   Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 39 inclusive, as if set forth fully herein.

41.   OON entered into an agreement with NTG to pick up a load weighing 20,000 lbs. from Rancho Dominguez, CA on August 19, 2021 between 10:00 a.m. and 11:00 a.m., and deliver the NTG Load to Las Vegas, NV on August 20, 2021 at 12:00 p.m., in exchange for a payment of $1,200.00.

42.   NTG breached the agreement by forcing OON to deliver at the NTG load, which weighed 40,000 lbs., twice the contracted weight. OON was forced to perform despite NTG's breach, as NTG refused to instruct the packer to unload the OON's truck.

43.   NTG amended the agreement to change the delivery time to 3:00 p.m., pay OON an additional $200.00 overweight charge, and an additional $800.00 layover charge, increasing the total amount payable to Plaintiff to $2,200.00. NTG also agreed to pay $1,100, half of the amount due, to OON via a comcheck, with the remaining balance due and payable after delivery was completed.

44.   Despite OON's delivery of the NTG Load, NTG refused to pay the remaining balance due.

45.    As a result of NTG's breaches of written agreements as described above, OON is owed not less than $25,000.00, together with interest, costs, and attorney's fees.

## SECOND CAUSE OF ACTION
### (Account Stated)
### *By OON Against NTG*

46.    Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 45, inclusive, as if set forth fully herein.

47.    Plaintiffs are informed and believes, and based thereon alleges that NTG became indebted to OON within the last four years because an account was stated in writing by and between OON and NTG, in which it was agreed that NTG was indebted to OON.

48.    As a result, and amount believed to be not less than $2,200.00, exclusive of interest, costs, and attorney's fees, is due and unpaid despite OON's demand.

## THIRD CAUSE OF ACTION
### (Open Book Account)
### *By OON Against NTG*

49.    Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 48, inclusive, as if set forth fully herein.

50.    Since August of 2021, NTG has become indebted to OON on an open book account for money due, which as of the date of filing this Complaint is not less than $1,271.50, exclusive of interest, costs, and attorney's fees.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)
### *By OON Against NTG*

51.    Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 50, inclusive, as if set forth fully herein.

52.   Preceding the commencement of this action, NTG became indebted to Plaintiff in the sum of no less than $2,200.00, for the reasonable value of labor and services performed at the request of NTG by Plaintiff. The sum of not less than $2,200.00 was and is less than the reasonable value of said labor and services. The sum of $2,200.00 has not been paid and is there is now due, owing, and unpaid from NTG to Plaintiff the sum of $1,271.50, together with interest, costs, and attorney's fees.

## FIFTH CAUSE OF ACTION
### (Fraudulent Misrepresentation)
#### *By OON Against NTG and SMITH*

53.   Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 52, inclusive, as if set forth fully herein.

54.   On or about August 17, 2021, and several times thereafter, NTG, by and through SMITH, told OON that the NTG load weighed 20,000 lbs, and was scheduled for delivery in Las Vegas, NV, at 12:00 pm, on August 20, 2021.

55.   Such representations were false, and SMITH knew that the NTG Load weighed a total of 40,000 lbs., and was not scheduled for delivery until 3:00 pm.

56.   SMITH made the false representation in order to induce OON to continue to provide services without compensation.

57.   OON reasonably relied on SMITH's false representation, and was harmed thereby, if not for such falsity, OON would not have agreed to transport the NTG load, and would not have missed out on the job it had pick-up an unrelated load in Nevada, to deliver it to California.

58.   On August 20, 2021, via text message, email, and verbally, SMITH told OON that the crew scheduled to unload the NTG Load was running late, and would be there at 3:00 pm.

59.    Such representations were false when made, as SMITH knew that the NTG Load was not scheduled for delivery until 3:00 pm.

60.    SMITH made the false representation in order to induce OON to continue to provide services without compensation.

61.    OON reasonably relied on SMITH's false representation, and was harmed thereby, if not for such falsity, OON would not have agreed to transport the NTG load, and would not have missed out on the job it had pick-up an unrelated load in Nevada, to deliver it to California.

62.    On August 20, 2021, at 2:44 pm, SMITH sent an email to OON promising that NTG would pay Plaintiff the full agreed upon sum of $2,200.

63.    Such representations were false when made, as SMITH had no intention of paying Plaintiff the $2,200 agreed on, and refused to pay the remaining $1,100 due and owing because OON allegedly breached an agreement, but the alleged breach occurred before 2:44 pm.

64.    SMITH made the false representation in order to induce OON to continue to provide services without compensation.

65.    OON reasonably relied on SMITH's false representation, and was harmed thereby, as a result of such falsity, Plaintiff was deprived  of $1,100.00.

66.    The Actions of SMITH and NTG as described above have damaged Plaintiff in the total amount of no less than $50,000.00, which is required to be paid to Plaintiff by NTG and SMITH, jointly and severally.

67.    The Actions of SMITH and NTG as described above were done with malice oppression, fraud, and the willful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights,

therefore entitling Plaintiff to an award of punitive damages against such Defendants in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Negligent Misrepresentation)
### *By OON Against NTG and SMITH*

68.    Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 67, inclusive, as if set forth fully herein.

69.    On or about August 17, 2021, and several times thereafter, NTG, by and through SMITH, told OON that the NTG load weighed 20,000 lbs, and was scheduled for delivery in Las Vegas, NV, at 12:00 pm, on August 20, 2021.

70.    SMITH had no reasonable basis for believing that the load weighed 20,000 lbs and was scheduled for delivery at 3:00 pm and that the crew was running late, as SMITH knew that the NTG Load weighed a total of 40,000 lbs., and was not scheduled for delivery until 3:00 pm.

71.    SMITH made the false representation in order to induce OON to continue to provide services without compensation.

72.    OON reasonably relied on SMITH's false representation, and was harmed thereby, if not for such falsity, OON would not have agreed to transport the NTG load, and would not have missed out on the job it had pick-up an unrelated load in Nevada, to deliver it to California.

73.    On August 20, 2021, via text message, email, and verbally, SMITH told OON that the crew scheduled to unload the NTG Load was running late, and would be there at 3:00 pm.

74.    SMITH and NTG had no reasonable basis for believing that the load was scheduled for delivery at 3:00 pm and that the crew was running late, as SMITH knew that the NTG Load was not scheduled for delivery until 3:00 pm.

75.   SMITH, as an agent of NTG, made the false representation in order to induce OON to continue to provide services without compensation.

76.   OON reasonably relied on SMITH's false representation, and was harmed thereby, if not for such falsity, OON would not have agreed to transport the NTG load, and would not have missed out on the job it had pick-up an unrelated load in Nevada, to deliver it to California.

77.   On August 20, 2021, at 2:44 pm, SMITH sent an email to BELL promising that NTG would pay OON the full agreed upon sum of $2,200.

78.   SMITH had no reasonable basis for believing that NTG would pay OON $2,200.00, as the alleged actions of OON which allegedly breached an agreement with NTG occurred before SMITH made said  misrepresentation.

79.   SMITH made said false representation in order to induce OON to continue to provide services without compensation.

80.   OON reasonably relied on SMITH's false representation, and was harmed thereby, as a result of such falsity, OON was deprived  of $1,100.00.

81.   The Actions of SMITH and NTG as described above have damaged Plaintiff in the total amount of no less than $50,000.00, which is required to be paid to Plaintiff by NTG and SMITH, jointly and severally.

### SEVENTH CAUSE OF ACTION
#### (Defamation—Libel )
#### *By Plaintiffs Against All Defendants*

82.   Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 81, inclusive, as if set forth fully herein.

83.   Plaintiffs at all times has enjoyed a good business reputation for over 20 years.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

84.    NTG, WASSERMAN, and SMITH's acts of posting disparaging false statements in the August Freightguard Report and October Freightguard Report constitute defamation. By posting the disparaging false statements, NTG, WASSERMAN, and SMITH published the statements to  third parties who understand the defamatory meaning and the applicability of the statements to Plaintiffs. These statements have been and continue to be made maliciously and fraudulently and are not privileged. These statements have caused and continue to cause injury to Plaintiffs' business reputation.

85.     These statements were made with the intent to mislead third parties about the ability of Plaintiffs to adequately and securely serve its customers. The statements misrepresent the nature, characteristics and qualities of Plaintiffs' services and have a tendency to deceive or confuse members of the public, including current and potential customers of Plaintiffs. In fact, several companies who Plaintiffs have worked with in the past have refused to work with him any further based on the false statements in the August and October Freightguard Reports.

86.    The false statements in the August and October Freightguard Reports are slanderous and defamatory on their face. They expose Plaintiffs  to contempt and obloquy because they impugn Plaintiffs' business reputation and their ability to serve its customers, as well as BELL's personal reputation.

87.    NTG, WASSERMAN, and SMITH posted the false statements in Freightguard Reports, which are viewed and relied upon by transportation brokers such as NTG, evidencing NTG, WASSERMAN, and SMITH's malicious intent to harm Plaintiffs.

88.    As a direct and proximate result of NTG, WASSERMAN, and SMITH's defamatory statements, Plaintiffs' business reputation and BELL's personal reputation have been injured,

resulting in the loss of current and potential customers and profits, and harming their goodwill and reputations.

89.   The harm to Plaintiffs from NTG, WASSERMAN, and SMITH's defamatory activities is ongoing and cumulative, and has harmed Plaintiff in an amount to be proven at trial, of no less than $500,000.00.

**EIGHTH CAUSE OF ACTION**
**(Defamation Per Se—Libel)**
***By Plaintiffs Against All Defendants***

90.   Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 89, inclusive, as if set forth fully herein.

91.   NTG, WASSERMAN, and SMITH, by the acts described herein, conspired to, and in fact, did negligently, recklessly and intentionally cause external publications of defamatory comments, of and concerning Plaintiffs, to third persons and the community. These false and defamatory statements in the August Freightguard Report, and the October Freightguard Report.

92.   The publication of the August Freightguard Report, and the October Freightguard Report were outrageous, negligent, reckless, intentional, and maliciously published and republished by NTG, WASSERMAN, and SMITH. Plaintiffs are informed and believes that the negligent, reckless, and intentional publications by said defendants, and each of them, were and continue to be, foreseeably published and republished by said defendants, their agents, employees, and recipients in the community. Plaintiffs hereby seeks damages for these publications and all foreseeable republications discovered up to the time of trial.

93.   The August Freightguard Report, and the October Freightguard Report were defamatory publications, consisting of written, knowingly false and unprivileged communications, tending

directly to injure OON and BELL's personal, business, and professional reputations. These publications included false and libelous statements (in violation of California Civil Code §§ 45, 45a and 46(3)(5)).

94.    None of the defamatory publications against Plaintiffs referenced above are true.

95.    The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiffs are informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiffs seeks redress by this action.

96.    Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiffs deny existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiffs in order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiffs' personal and professional reputations.

97.    Each of these publications by Defendants, and each of them, were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. The Defendants published these statements knowing them to be false. These acts of publication were known by Defendants, and each of them, to be negligent to such a degree as to be reckless. In fact, not only did Defendants, and each of them, have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendants, and each of them, excessively, negligently, and

recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

98.    The above complained-of publications by Defendants, and each of them, were made with hatred and ill will towards Plaintiffs with the design and intent to injure Plaintiffs, Plaintiffs' good name and professional reputation. Defendants, and each of them, published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiffs and destroy their professional reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

99.    As a direct and proximate result of the above described publications, Plaintiffs have suffered loss to its professional reputation,  and has been refused work, severely impacting its ability to conduct business.

100.   Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiffs' rights. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiffs are thus entitled to recover punitive and exemplary damages from Defendants, and each of them, for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at time of trial.

101.   Defendants' defamatory publications were a substantial factor in causing Plaintiffs harm. The harm to Plaintiffs from NTG, WASSERMAN, and SMITH's defamatory activities is

ongoing and cumulative, and has harmed Plaintiffs in an amount to be proven at trial, of no less than $500,000.00.

## NINTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### *By Steven Bell Against All Defendants*

102.  Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 101, inclusive, as if set forth fully herein.

103.  Defendants, and each of them, engaged in extreme and outrageous conduct herein above alleged with wanton and reckless disregard of the likelihood of causing BELL to suffer severe emotional distress. For example, Defendants posted false and defamatory Freightguard reports which they knew would be viewed by other brokers, who would refuse to work with BELL and OON in the future.

104.  When Defendants did the acts described in this Complaint, they did such acts deliberately and intentionally so as to cause BELL severe emotional distress. Defendants' conduct in confirming and ratifying that conduct was done with the knowledge that BELL's distress would thereby increase, and was done with wanton and reckless disregard for the probability of causing BELL emotional distress.

105.  As a direct and proximate result of the extreme and outrageous conduct engaged in by Defendants, BELL suffered humiliation, mental anguish extreme emotional , anxiety, and sleeplessness.

106.  Defendants' conduct as herein alleged was malicious and oppressive in that it was conduct carried on by Defendants in a willful and conscious disregard of BELL's rights and subjected him to cruel and unjust hardship. BELL is therefore entitled to an award of punitive damages against Defendants.

107.  As a direct, foreseeable and legal result of Defendants' unlawful acts, BELL has suffered and continues to suffer substantial losses in earnings, and damage to his professional reputation, and has suffered and continue to suffer humiliation, embarrassment, severe mental and emotional distress, and discomfort, all to BELL's damages, in an amount of no less than $500,000.00, subject to proof at trial.

**TENTH CAUSE OF ACTION**
**(Negligent Infliction of Emotional Distress)**
***By Steven Bell Against All Defendants***

108.  Plaintiffs incorporates by this reference all allegations contained in Paragraphs 1 through 107, inclusive, as if set forth fully herein.

109.  Defendants owed BELL a duty of care not to cause him emotional distress.

110.  Defendants breached this duty of care by way of their own conduct as alleged herein.

111.  For example, Defendants posted false and defamatory Freightguard reports which they knew would be viewed by other brokers, who would refuse to work with BELL and OON in the future.

112.  Defendants' conduct from August 2021 continuing to the present has caused BELL emotional distress.

113.  As a proximate result of Defendants' extreme and outrageous acts, BELL has suffered emotional distress, humiliation and embarrassment.

114.  Defendants' conduct has caused and continues to cause BELL substantial losses in earnings, significant reputation and professional injury, medical expenses, future earnings and benefits, costs of suit, embarrassment and anguish, thereby damaging him in an amount of no less than $500,000.00, subject to proof at trial.

## ELEVENTH CAUSE OF ACTION
### (Fraudulent Business Practices—Cal. Bus. & Prof. Code § 17200 *et seq*)
### *By Plaintiffs Against NTG*

115.  Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 114, inclusive, as if set forth fully herein.

116.  Defendants, and each of them, engaged in fraudulent, unlawful, and unfair business practices prohibited by California Business and Professions Code § 17200, et seq., by virtue of the foregoing acts described herein above.

117.  Plaintiffs were harmed as a result of said practices by, without limitation, the loss of income, and the loss of hundreds of thousands of dollars in future income.

118.  The foregoing actions were and are regular business practices of the Defendants.

119.  As a direct and proximate result of the aforementioned acts. Plaintiffs are entitled to restitution in an amount to be proven at trial.

## TWELFTH CAUSE OF ACTION
### (Violation of 49 U.S.C. § 14103(b))
### *By OON Against NTG*

120.  Plaintiffs incorporate by this reference all allegations contained in Paragraphs 1 through 119, inclusive, as if set forth fully herein.

121.  49 U.S.C. § 14103(b), states, in pertinent part: "It shall be unlawful to coerce or attempt to coerce any person providing transportation of property by motor vehicle for compensation in interstate commerce to load or unload any part of such property onto or from such vehicle…"

122.  As set forth in greater detail above, NTG violated 49 U.S.C. § 14103(b) by coercing OON to take possession  of the NTG Load. For example, NTG lied about the weight and delivery time, and promising to pay a $200.00 overweight charge, an $800.00 layover charge,

1

2

and $50 per hour waiting charge, and then refused to pay said charges after OON delivered the NTG Load.

123.  Pursuant to 49 U.S.C. § 14704(a)(2), OON is entitled to damages in an amount to be proven at trial, including injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs   OUT OF NOWHERE, d/b/a as OCEANS WEST and STEVEN BELL, pray for judgment against Defendants, NOLAN TRANSPORTATION GROUP, LLC, MARK SMITH, LEE WASSERMAN., and DOES 1-10 as follows:

    a)  On Count I, awarding damages in favor of Plaintiff and against Defendant(s) for an amount in excess of $25,000.00, subject to proof at trial, plus interest, costs, and attorneys' fees;

    b)  On Count II, awarding damages in favor of Plaintiff and against Defendant(s) for an amount in excess of $2,200.00, subject to proof at trial, plus interest, costs, and attorneys' fees;

    c)  On Count III, awarding damages in favor of Plaintiff and against Defendant(s) for an amount in excess of $2,200.00, subject to proof at trial, plus interest, costs, and attorneys' fees;

    d)  On Count IV, awarding damages in favor of Plaintiff and against Defendant(s) for an amount in excess of $2,200.00, subject to proof at trial, plus interest, costs, and attorneys' fees;

    e)  On Count V, awarding damages in favor of Plaintiff and against Defendant(s) for an amount subject to proof at trial, punitive damages, plus interest, costs, and attorneys' fees;

f) On Count VI, awarding damages in favor of Plaintiff and against Defendant(s) for an amount subject to proof at trial, punitive damages, plus interest, costs, and attorneys' fees;

g) On Count VII, awarding damages in favor of Plaintiff and against Defendant(s) for an amount in excess of $500,00.00 and punitive damages, subject to proof at trial, plus interest, costs, and attorneys' fees;

h) On Count VIII, awarding damages in favor of Plaintiff and against Defendant(s) for an amount in excess of $500,00.00 and punitive damages, subject to proof at trial, plus interest, costs, and attorneys' fees;

i) On Count IX, awarding damages in favor of Plaintiff and against Defendant(s) for an amount in excess of $500,00.00 and punitive damages, subject to proof at trial, plus interest, costs, and attorneys' fees;

j) On Count X, awarding damages in favor of Plaintiff and against Defendant(s) for an amount in excess of $500,00.00 and punitive damages, subject to proof at trial, plus interest, costs, and attorneys' fees;

k) On Count XI, awarding damages in favor of Plaintiff and against Defendant(s) for restitution in an amount to be proven at trial;

l) On Count XII, awarding damages in favor of Plaintiff and against Defendant(s) in an amount to be proven at trial, and injunctive relief; and,

m) For such other and further relief, legal or equitable, as the Court may deem just and proper.

//

//

//

1

### DEMAND FOR JURY TRIAL

2

Plaintiff OUT OF NOWHERE, d/b/a as OCEANS WEST, and Plaintiff STEVEN BELL,

3

hereby demand a trial by jury of all claims triable by jury.

4

5

DATED:  November 9, 2021                    Respectfully Submitted:

6

7

_____  */s/ Nicolas Spigner*_____

8

**Nicolas W. Spigner**, for the firm
Spiegel & Utrera, P.C.

9

8939 S. Sepulveda Blvd., Suite 400
Los Angeles, California 90045

10

Phone: (305) 854-6000
Fax: (305) 857-3700

11

*Attorney for OUT OF NOWHERE*
*d/b/a OCEANS WEST and STEVEN BELL*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF EXHIBITS**

**1.  Exhibit A:**          First Carrier Conformation for the NTG Load, dated August 17, 2021

**2.  Exhibit B:**          VGL's Bill of Landing for the NTG Load

**3.  Exhibit C:**          Second Carrier Confirmation with the $200 overweight charge

**4.  Exhibit D:**          Plaintiffs' location history while transporting the NTG Load

**5.  Exhibit E:**          Text messages between Plaintiff and Defendant

**6.  Exhibit F:**          Text Message from Brian Oxley

**7.  Exhibit G:**          Third Carrier Confirmation reflecting the additional $800 layover payment

**8.  Exhibit H:**          NTG's email promising to pay NTG $50 an hour for detention starting at 2:00 pm

**9.  Exhibit I:**          Fourth Carrier Confirmation reflecting the $1,100 advance lumper payment

**10. Exhibit J:**          NTG's email instructing Plaintiffs to cash the comcheck

**11. Exhibit K:**          Plaintiffs' receipt from cashing the comcheck

**12. Exhibit L:**          Fifth Carrier Conformation

**13. Exhibit M:**          Scott Webb's August 17, 2021 Emails

**14.  Exhibit N:**          Invoice T080081921

**15.  Exhibit O:**          August Freightguard Report

**16.  Exhibit P:**          October Freightguard Report

**17.  Exhibit Q:**          Correspondence from NFI Industries, Inc., refusing to hire Plaintiff due to the October Freightguard Report

**18.  Exhibit R:**          Correspondence from XPO Logistics, refusing to hire Plaintiff due to the October Freightguard Report

**19.  Exhibit S:**          Correspondence from Team Eagle Logistics, Inc., refusing to hire Plaintiff due to the October Freightguard Report

**20.  Exhibit T:**          Photograph of Snap Towing unloading the NTG Load from OON's truck, taken by Steven Bell, on August 20, 2021.